UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SOUTH CENTRAL INDIANA SCHOOL TRUST, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 1:06-cv-1053-RLY-WTL |
| VIRGINIA POYNER, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

The Plaintiff South Central Indiana School Trust ("the South Central Trust" or "the Trust"),

by counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure and S.D. Local Rule 56.1

files its Memorandum in Support of Plaintiff's Motion for Summary Judgment and in support

thereof states:

## I.      INTRODUCTION

Virginia Poyner ("Ms. Poyner"), a plan participant covered under the Trust's Medical and

Dental Plan Document and Employee Summary Plan Description (the "Plan"), sought payment for

medical expenses incurred as a result of an accident with a third-party tortfeasor.  The Trust paid

benefits on Ms. Poyner's behalf in excess of One Hundred Ninety Four Thousand One Hundred

Twenty-Nine Dollars and Fifty Cents ($194,129.50).  The terms of the Plan, as well as the provisions

of a Subrogation Disclosure and Agreement (the "Subrogation Agreement") executed by Ms.

Poyner, require her to assign to the Trust all amounts recovered in connection with the accident up to

the amount paid by the Trust on her behalf.  Ms. Poyner received One Hundred and Ten Thousand

Dollars ($110,000.00) related to the tortfeasor's liability; however, to date, she has failed and refused

to remit that amount to the Trust.  As a result, the Trust brought this suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(3), 29 U.S.C. § 1132(a)(3) to recover what it is owed under the terms of the Plan and the Subrogation Agreement.

Ms. Poyner alleges that the Trust is not entitled to the recovery sought, arguing that it is exempt from ERISA as a governmental plan.  (Answer, ¶ 5).  Not true.  The Trust does provide benefits to government and nongovernmental employees.  However, the level of non-governmental employee participation exceeds a *de minimis* percentage of the total participation, thereby bringing the Trust into ERISA's coverage.  As such, the Trust is entitled to enforce its equitable lien, as there is no dispute that Ms. Poyner failed to satisfy her obligation to submit to the Trust the amounts she recovered in connection with her accident.

## II.     DESIGNATION OF PAPERS AND PLEADINGS

1.     The Declaration of Julie A. Burton ("Burton Dec."), a true and accurate copy of which is included in the Appendix filed simultaneously herewith, and all exhibits thereto.

2.     Complaint.  Dkt. 1.

3.     Defendant's Answer.  Dkt. 26.

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts constitute all of the facts necessary for this Court to enter summary judgment in favor of the South Central Trust:

1.     On March 28, 2005, Ms. Poyner was struck by an automobile while riding her bicycle and she suffered injuries as a result thereof.  (Complaint, ¶¶ 8, 9; Answer, ¶ 8)

2.     Ms. Poyner, a participant in the South Central Trust, sought reimbursement from the Trust for the medical expenses incurred as a result of the accident.  (Complaint, ¶ 10; Answer, ¶ 8)

3.     The Trust paid medical expenses on behalf of Ms. Poyner in relation to the accident in the sum of One Hundred Ninety-Four Thousand One Hundred Twenty-Nine Dollars and Fifty Cents ($194,129.50).  (Complaint, ¶ 11)

4.     The Trust is administered according to the terms of the Plan.  (Complaint, ¶ 7; Burton Dec. ¶ 5 and Exhibit A).

5.     The Plan contains a section titled "Third Party Recovery Provision," which includes the following language:

> Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer.  This Subrogation right allows the Plan to pursue any claim which the Covered Person has against any Third Party, or insurer, whether or not the Covered Person chooses to pursue that claim.  The Plan may make a claim directly against the Third Party or insurer, but in any event, the Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

(Burton Dec. ¶ 5; Exhibit A thereto, pp. 46-47).

6.     The "Third Party Recovery Provision" further states, in pertinent part, that:

> The Covered Person agrees to recognize the Plan's right to Subrogation and reimbursement.  These rights provide the Plan with a 100%, first dollar priority over <u>any</u> and all Recoveries and funds paid by a Third Party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical charges, attorney fees, or other costs and expenses.  Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any and all rights the Covered Person may have to recover payments from any Responsible Third Party.  Further, accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan the Covered Person's Third Party Claims.

(Burton Dec. ¶ 5; Exhibit A thereto, pp. 46-47).

7.      Ms. Poyner executed the Subrogation Agreement on September 16, 2005, containing the following provision:

> If at any later date I become entitled to any rights against a third party for reimbursement for injuries resulting from said accident, I will repay to the Plan all claim payments made to me or on my behalf by the Plan, regardless of whether I receive enough money to make me whole or otherwise fully compensate me for my injuries or losses.

(Complaint, ¶ 17; Exhibit B, ¶ 1)

8.      In executing the Subrogation Agreement, Ms. Poyner also agreed to:

> Assign, set over, transfer, and convey to the Plan all right, title, and interest in and to any payments now or hereafter made or recovered or to which I am or may become entitled for said injuries up to the amount paid by the Plan to me or on my behalf.

(Complaint, Exhibit B, ¶ 2)

9.      Relative to the March 28, 2005 accident, Ms. Poyner recovered a total of One Hundred Ten Thousand Dollars ($110,000.00) in resolution of her personal injury claim. (Complaint, ¶ 14; Answer, ¶ 8)

10.      Ms. Poyner has refused to reimburse the Trust the entire One Hundred Ten Thousand Dollars ($110,000.00).  (Complaint, ¶ 24; Answer, ¶14)

11.      At the time of Ms. Poyner's accident on March 28, 2005, 1,618 individuals were entitled to benefits under the Plan, 139 or 8.59% of which were non-governmental employees. (Burton Dec., ¶¶ 4, 5)

## IV.      ARGUMENT

### A.      <u>Summary Judgment Standard.</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

4

of law." Fed. R. Civ. P. Rule 56(c).  However, Rule 56(c) is not a requirement that the moving party

negate his opponent's claim.  <u>Fitzpatrick v. Catholic Bishop of Chicago</u>, 916 F.2d 1254, 1256 (7th

Cir. 1990).  Rather, Rule 56(c) mandates the entry of summary judgment against a party "who fails

to make a showing sufficient to establish the existence of an element essential to that party's case

and in which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S.

317, 325 (1986).  That is, the non-moving party must show, by specific factual allegations, the

existence of an issue of fact sufficient to allow a jury to reasonably find for that party.  <u>Anderson v.</u>

<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  <u>See</u> <u>also</u> <u>DeLuca v. Winer Indus., Inc.</u>, 53 F.3d 793,

796 (7th Cir. 1995), <u>citing</u> <u>Celotex</u>, 477 U.S. at 324.  Neither "self-serving assertions without factual

support," <u>Jones v. Merchants Nat. Bank & Trust Co.</u>, 42 F.3d 1054, 1057-58 (7th Cir. 1994), nor the

mere demonstration of "some metaphysical doubt as to the material facts" will defeat the motion.

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Instead, the non-

moving party must come forward with "specific facts showing that there is a <u>genuine issue for trial</u>."

<u>Id.</u> at 587 (emphasis in original) (citing Fed. R. Civ. P. 56(e)).

### B.     The South Central Trust is Subject to ERISA.

Title I of ERISA establishes specific criteria for covered plans that, subject to specified

exceptions, "apply to any employee benefits plan if it is established . . . or maintained . . . by any

employer . . . or by any employee organization . . . or . . . by both."  29 U.S.C. § 1003(a) (2000).  The

terms "employee welfare benefit plan" and "welfare plan" mean any "plan, fund, or program … to

the extent that such plan, fund, or program was established or is maintained for the purpose of

providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,

(A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident …."

The Plan is established and maintained by an "employer … or by any employee organization" for the

purpose of providing medical, surgical, or hospital care or benefits, or benefits in the event of accident, to its participants and beneficiaries.  Burton Dec., ¶ 5; Exhibit A, thereto.  Therefore, unless removed from this definition by an exception, the Plan is an ERISA plan.[1]

The provisions of Title I of ERISA do "not apply to any employee benefit plan . . . if such plan is a governmental plan."  29 U.S.C. § 1003(b)(1) (2000).  A governmental plan under ERISA is defined as:

> A plan established or maintained for its employees by the Government of the United States, by the government of any state or political subdivision thereof, or by any agency or instrumentality of any state or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.

29 U.S.C. § 1002(32) (2000).

In determining whether an employee benefit plan will be considered a governmental plan, the Department of Labor has instructed that "governmental plan status [will] not [be] affected by participation of a *de minimis* number of private sector employees."  Dep't. of Labor Op. 99-10A (1999) (citing Dep't of Labor Op. 95-27A).[2]  For instance, the Department of Labor has concluded that a benefits plan that administered benefits to 10,987 individuals and where 236 or roughly two-percent (2%) were private sector employees remained a governmental plan as it had not eclipsed the *de minimis* threshold based on the small amount of non-government employee participation.  Dep't of Labor Op. 95-15A (1995).

---

[1] This Court noted that the Plan qualifies as an ERISA plan in its Entry on Defendant's Motion to Dismiss:  "As a benefit plan, the Trust is subject to ERISA."  Dkt. 23, dated February 8, 2007.

[2] Although Department of Labor opinion letters have no precedential value, courts have accorded them significant weight and have relied on them for guidance in determining whether an employee benefits plan is subject to ERISA. *See, e.g.,* Hall v. Maine Municipal Employees Health Trust, 93 F. Supp. 2d 73, 80 & N.13 (U.S. Dist. Ma. 2000); Scalice v. Pennsylvania Employee Benefit Trust Fund, 888 A.2d 429, 438 (Newman, J., concurring) (Pa. 2005).  Moreover, "the interpretation of an agency concerning a regulation within its scope is entitled to deference."  Scalice, 888 A.2d at 437 (Newman, J., concurring) (citing Uniontown Area School District v. Pennsylvania Human Relations Commission, 445 Pa. 52, 313 A.2ed 156, 169 (Pa. 1973) (citing in turn American Telephone & Telegraph Co. v. United States, 299 U.S. 232 (1936)).  "As such, the guidance given by the DOL in determining the criteria for becoming a non-governmental plan should be heeded."  Id.

Thus far, only a few published opinions, and none within the Seventh Circuit, have analyzed the question of what constitutes a *de minimis* level of nongovernmental employee participation for purposes of determining whether an employee benefit plan is excluded from regulation under ERISA.  Although not conducting any significant analysis of the issue, <u>Kirkpatrick v. Merit Behavioral Care Corp.</u> appears to be the first court to mention it.  70 F. Supp.2d 443 (D.Vt. 1999).  In <u>Kirkpatrick</u>, the United States District Court for the District of Vermont examined two separate benefit plans – the State Plan and the Schools Plan - to determine whether they constituted governmental plans within the meaning of ERISA.  In finding that both plans were governmental plans, the <u>Kirkpatrick</u> Court looked to some of the considerations outlined in 29 U.S.C. § 1002(32) (*i.e.,* who the plans were established by and for), ultimately finding that both plans were established by government bodies for their employees.  <u>Kirkpatrick</u>, 70 F. Supp.2d at 444-448.  The Court did not examine any Department of Labor Opinions, nor did it analyze the meaning of *de minimis* or even mention the term.  Nevertheless, it did note, without further explanation, that the 1% of nongovernmental employees covered by the State Plan was a "small number" and did "not change the fact that the State of Vermont" established the plan and established it for its employees.  <u>Id.</u>  It further held that the 7.6% of governmental employees covered by the School Plan did not violate the governmental plan exception's purpose or unduly broaden its scope.  <u>Id.</u>

Since <u>Kirkpatrick</u>, two courts have engaged in a more in-depth analysis of the meaning of *de minimis* for purposes of the governmental plan exception to ERISA.  In <u>Hall v. Maine Municipal Employees Health Trust</u>, after analyzing the relevant opinions issued by the Department of Labor, the United States District Court for the District of Maine found that a benefits plan was a governmental plan and exempt from ERISA when 609 of the 16,399 employees, or 3.7% of the participants, were non-governmental employees.  93 F. Supp.2d 73, 74 and n.3, 81 (D. ME 2000).

Likewise, in Scalice v. Pennsylvania Employees Benefit Trust Fund, the Supreme Court of Pennsylvania engaged in an analysis of relevant Department of Labor Opinions before finding that a benefits plan in which only 1.2%[3] of plan participants were non-governmental employees was a governmental plan subject to state law.  883 A.2d 429, 436 (Pa. 2005).  In both cases, because of the small number of nongovernmental employees participating in the subject plans relative to the number of governmental employees participating, it was determined that neither had eclipsed the *de minimis* threshold for purposes of falling within ERISA's coverage.

By contrast, at the time of Ms. Poyner's March 28, 2005 accident, the South Central Trust provided benefits to 1,618 employees, 139 or 8.59% of who were non-governmental employees. (Burton Dec., ¶ 4)  These nongovernmental employee participants were employed by three separate not-for-profit organizations.  Id.  The percentage level of nongovernmental employees receiving benefits under South Central Trust's Plan exceeds the percentage at issue in all of the cases and Department of Labor Opinions discussed above.  Specifically, the percentage of nongovernmental employee participation at issue herein is more than double that at issue in Hall, more than four (4) times that is issue in Dep't of Labor Op. 95-15A (1995),[4] and more than seven (7) times that at issue in Scalice.  While the percentage of nongovernmental employee participation at issue in Kirkpatrick is only approximately one percent (1%) lower than that at issue here, it is important to note the Kirkpatrick Court does not analyze the relevant Department of Labor Opinions, and, therefore, failed to apply the *de minimis* test established thereunder.

---

[3] Approximately 1,000 of the 85,000 employees were nongovernmental employees.  Id.

[4] Also cited, *supra*, are Dep't. of Labor Op. 99-10A (1999), in which the percentage of nongovernmental participants at issue was less than one percent (1%), and Dep't of Labor Op. 95-27A, in which the Public Employees Retirement Association of Minnesota sought an opinion as to whether the addition of certain nongovernmental participants would adversely affect the status of its governmental plan.  Because the addition of nongovernmental members was only contemplated at the time the opinion was sought (*i.e.*, there were no nongovernmental members at that time), the Department of Labor recognized the *de minimis* exception, but did not provide any guidance as to the definition of *de minimis*.

No bright line rule has been developed defining the meaning of *de minimus* for purposes of the governmental plan exception to ERISA.  However, there must be a saturation point at which the number of nongovernmental employee participants in a "governmental plan" can no longer be considered *de minimis*.  Black's Law Dictionary defines *de minimis*, as follows:

> De minimis (də min-ə-mis), adj. [Latin "of the least"] 1. Trifling; minimal. 2. (of a fact or thing) so insignificant that a court may overlook it in deciding an issue or case. 3. DE MINIMIS NON CURAT LEX.

Black's Law Dictionary 443 (7th ed. 1999).  The number of nongovernmental employees to whom the South Central Trust provides benefits is neither "trifling" nor "minimal" and this Court should not overlook it, especially in light of the intent of Congress to comprehensively regulate employee welfare and pension benefit plans.  New York State Conference of Blue Cross & Blue Shield Plans, et al. v. Travelers Insurance Company, et al., 514 U.S. 645 (1995).

During the pertinent time period, the South Central Trust provided benefits to a significant number of non-governmental employee participants, thereby qualifying it for coverage under ERISA.  On this basis, the South Central Trust is entitled to summary judgment in its favor and against Ms. Poyner.

**C.      The South Central Trust is Entitled to Summary Judgment in its Favor and Enforcement of its Equitable Lien Against Ms. Poyner Based Upon the Undisputed Facts.**

Ms. Poyner previously filed a Motion to Dismiss the Trust's Complaint, alleging that the relief requested by the Trust was monetary instead of equitable, and therefore not recoverable under ERISA § 501(a)(3).  However, this Court disagreed, holding in its Entry on Defendant's Motion to Dismiss that the South Central Trust is entitled to subrogation and enforcement of its equitable lien against Ms. Poyner for amounts paid to her by her insurer and the third-party tortfeasor.  Dkt. 23, dated February 8, 2007.  Further the Supreme Court of the United States has made plain that

"ERISA provides for equitable remedies to enforce plan terms . . ." <u>Sereboff v. Mid Atlantic Medical Services, Inc.</u>, 126 S.Ct. 1869, 1874 (2006).  Therefore, "[a]nd as a general rule, the subrogation rights of an ERISA-qualified medical plan are enforceable against both the employee-beneficiary and/or a third-party tortfeasor who is held responsible for the injuries to the employee-beneficiary."  <u>Biomet, Inc. Health Benefit Plan v. Black</u>, 51 F. Supp.2d 942, 944-45 (N.D. Ind. 1999).

It is an undisputed fact that Ms. Poyner received $194,129.50 from the South Central Trust as payment for medical costs she incurred as a result of her bicycle accident.  Additionally, the Parties agree that Ms. Poyner received an additional $110,000 in payment for her injuries from her insurer and from the third-party tortfeasor's insurer.  The benefits from the Plan were paid because she was a participant in the Trust's Plan.  The Plan recognizes its right to subrogation and reimbursement.  Further, Ms. Poyner signed the Subrogation Agreement, in which she agreed to "repay to the Plan all claim payments made to me or on my behalf by the Plan, <u>regardless of whether I receive enough money to make me whole or otherwise fully compensate me for my injuries or losses</u>." (Emphasis added).  No question exists that under the terms of the Plan and the Subrogation Agreement that Ms. Poyner agreed to assign (and South Central is entitled to recover) in subrogation all payments forwarded her by the Trust.  She has simply changed her mind.

Ms. Poyner's failure to reimburse the Plan subjects the One Hundred Ten Thousand Dollars ($110,000.00) paid to her by the insurers to an equitable lien in the South Central Trust's favor.  As such, the South Central Trust is entitled to summary judgment in its favor and to enforcement of its equitable lien.

## <u>CONCLUSION</u>

For the reasons set forth above, the South Central Indiana School Trust, by counsel, respectfully requests that this Court enter summary judgment in its favor and against Defendant Virginia Poyner on all issues presented in the Complaint and herewith, and for all other just and equitable relief in the premises.

Respectfully submitted,

s/Melinda R. Shapiro
Melinda R. Shapiro, Atty. # 18153-49

BOSE McKINNEY & EVANS LLP
135 North Pennsylvania Street
2700 First Indiana Plaza
Indianapolis, IN  46204
Telephone:  (317) 684-5000
Facsimile:  (317) 684-5173

Attorney for Plaintiff
South Central Indiana School Trust

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2007, a copy of "Plaintiff's Memorandum in Support of Motion for Summary Judgment" was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> Phyllis J. Garrison, Esq.
> phyl@garrisonlegal.com
> GARRISON LAW FIRM, LLC
> 8720 Castle Creek Parkway, Suite 200
> Indianapolis, IN  46250


> _____
> Melinda R. Shapiro

882751_3/4655.0003