UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SOUTH CENTRAL INDIANA SCHOOL TRUST, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 1:06-cv-1053-RLY-WTL |
| VIRGINIA POYNER, | ) ) | |
| Defendant. | ) | |

**ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On July 12, 2006, the plaintiff, the South Central Indiana School Trust ("the Trust"), filed a Complaint seeking subrogation and reimbursement from the defendant, Virginia Poyner ("Poyner"). Both parties move for summary judgment. As the motions address the same pivotal issue – whether the Plan at issue is an ERISA Plan or falls within the governmental plan exception – the court will treat the motions as cross-motions for summary judgment. For the reasons explained below, the court **GRANTS** the Trust's motion for summary judgment, and **DENIES** Poyner's motion.

**I.      Summary Judgment Standard**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In this case, the material facts are

1

undisputed; thus, the issue is one of law. Accordingly, this case is well-suited for summary judgment.

## II.    Background

1. Poyner was injured on March 28, 2005, when she was struck by an automobile while riding her bicycle.

2. At the time of the accident, Poyner was a participant in the Trust, and sought reimbursement for her medical expenses related to the accident.

3. The Trust paid $194,129.50 for medical expenses on her behalf.

4. The Trust is administered according to the terms of the Plan.

5. The Summary Plan Description (the "Plan") contains a section titled "Third Party Recovery Provision," which includes the following language:

    Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer. This Subrogation right allows the Plan to pursue any claim which the Covered Person has against any Third Party, or insurer, whether or not the Covered Person chooses to pursue that claim. The Plan may make a claim directly against the Third Party or insurer, but in any event, the Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

    (Summary Plan Description, Plaintiff's Ex. A ("Plaintiff's Ex. A") at 46).

6. The "Third Party Recovery Provision" further states, in pertinent part, that:

    The Covered Person agrees to recognize the Plan's right to Subrogation and reimbursement. These rights provide the

2

> Plan with a 100%, first dollar priority over any and all Recoveries and funds paid by a Third Party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical charges, attorney fees, or other costs and expenses. Accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan any and all rights the Covered Person may have to recover payments from any Responsible Third Party. Further, accepting benefits under this Plan for those incurred medical expenses automatically assigns to the Plan the Covered Person's Third Party Claims.

(*Id.*).

7. Poyner executed the Subrogation Agreement on September 16, 2005, containing the following provision:

> If at any later date I become entitled to any rights against a third party for reimbursement for injuries resulting from said accident, I will repay to the Plan all claim payments made to me or on my behalf by the Plan, regardless of whether I receive enough money to make me whole or otherwise fully compensate me for my injuries.

(Complaint, Ex. B ¶ 1).

8. In executing the Subrogation Agreement, Poyner also agreed to:

> Assign, set over, transfer, and convey to the Plan all right, title, and interest in and to any payments now or hereafter made or recovered or to which I am or may become entitled for injuries up to the amount paid by the Plan to me or on my behalf.

(*Id.* ¶ 2).

9. Relative to the March 28, 2005 accident, Poyner recovered a total of $110,000 in resolution of her personal injury claim.

3

10. Poyner has refused to reimburse the Trust for her medical expenses.

11. The Trust is (and was at all relevant times) a self-funded group health plan administered through a third-party claims administrator. (Second Declaration of Julie A. Burton ("Second Burton Dec.") ¶ 4); Plaintiff's Ex. A at 60).

12. Funding for benefits was derived from the funds of the participating employers and contributions made by covered employees. (Plaintiff's Ex. A at 60).

13. The Plan's fiduciary is the Trust. (*Id*. at 61).

14. At the time of Poyner's accident, twelve employers participated in the Plan. (Plaintiff's Ex. A at 60-61, 74). Nine of these entities were public entities and included the following: Central Nine Career Center, Edinburgh Community School Corporation, Franklin Community School Corporation, Metropolitan School District of Martinsville, Ninevah-Hensley-Jackson United School Corporation, Richland Bean-Blossom Community School Corporation, Shelby Eastern Schools, Southwestern Consolidated School District of Shelby County, and Special Services Johnson County Schools. The three remaining employers were private entities – Franklin College, a private, not-for-profit institution, the Indiana Association of School Principals ("IASP"), an Indiana not-for-profit corporation, and the Indiana State School Music Association, also an Indiana not-for-profit corporation.

(Trust Document, Defendant's Ex. A at 1; *see also* Declaration of Julie A. Burton ("Burton Dec.") ¶ 4(c); Second Burton Dec. ¶¶ 6-7).

15. Franklin College was a member of the Plan, and therefore a member of the Trust, at the time of the Plan's creation in 1989. (Second Burton Dec. ¶ 5). The Indiana Association of School Principals became a member of the Trust (and the Plan) in November 1994[1]. (*Id*. ¶¶ 6-7).

16. The three private employers had trustees named in the Plan who served on the Trust board at the time of Poyner's injury. (Plaintiff's Ex. A at 60-61). Franklin College had two trustees named in the Plan. (*Id*. at 60).

17. A total of 1,618 individuals were entitled to benefits under the Plan. One hundred thirty-nine or 8.59% of those individuals were employed by the private entities described above. (Burton Dec. ¶¶ 4(a), (b)).

## III. Discussion

The issue presented by the parties' motions for summary judgment is whether the Plan is an ERISA Plan. Poyner contends that the Plan is not an ERISA Plan because it fits within the governmental plan exception. Poyner further contends that since the Plan is not an ERISA plan, the court must dismiss the case for lack of subject matter jurisdiction.

Title I of ERISA establishes specific criteria for covered plans that, subject to

---

[1] The Indiana State School Music Association was a member of the Indiana Association of School Principals at the time IASP joined the Trust in 1994. It became its own distinct entity in October 1999 and remained a member of the Trust. (Second Burton Dec. ¶ 6).

specified exceptions, "apply to any employee benefit plan if it is established . . . or maintained . . . by any employer . . . or by any employee organization . . . or . . . by both." 29 U.S.C. § 1003(a) (2000).  The terms "employee welfare benefit plan" and "welfare plan" mean any "plan, fund, or program . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident . . .".  29 U.S.C. § 1002(1).

The parties agree that the Plan at issue is an employee welfare benefit plan developed to provide medical insurance to its beneficiaries, that the Trust is an employer[2] as defined by ERISA, and that its Trustees 'established or maintained' the Plan for their employees.  Thus, the only issue in dispute is whether or not the Plan falls within the governmental plan exception.

The provisions of Title I of ERISA do "not apply to any employee benefit plan . . . if such plan is a governmental plan." 29 U.S.C. § 1003(b)(1) (2000).  A governmental plan is defined as:

> A plan established or maintained for its employees by the Government of the United States, by the government of any state or political subdivision thereof, or by any agency or instrumentality of any state or political

---

[2] The parties are in agreement that the Plan at issue is classified as a multiple employer welfare arrangement ("MEWA").  ERISA defines a MEWA as, "any . . . arrangement, which is established or maintained for the purposes of offering or providing any benefit . . . to the employees of two or more employers, or to their beneficiaries."  29 U.S.C. § 1002(40).  As such, the group is considered the "employer" for purposes of ERISA.  *See* 29 U.S.C. § 1002(5).

>   subdivision thereof, or by any agency or instrumentality of any of the foregoing.

29 U.S.C. § 1002(32) (2000).  Based upon the plain language of the statute, a plan "is a governmental plan if it is *either* established *or* maintained by a government body for its employees." *Kirkpatrick v. Merit Behavioral Care Corp.*, 70 F.Supp.2d 443, 447 (D.Vt. 1999) (internal quotations and citations omitted). Thus, if the court concludes that the Plan was established by a governmental entity, the Plan is exempt from ERISA regulation and the court's inquiry is at an end.  *Id*. at 448; *Hall v. Maine Municipal Employees Health Trust*, 93 F.Supp.2d 73, 79 (D. Me. 2000) (citing *Triplett v. United Behavioral Health Sys.*, 1999 WL 238944, at * 3 (E.D. Pa. Mar. 29, 1999)).  The court therefore focuses its inquiry on whether the Trust was established by a governmental entity.

   The evidence submitted reflects that the Trust is a self-funded group health plan established to provide health insurance for plan participants.  At the time of its formation, the Plan included public entities and one private entity, Franklin College.  At the time of the accident in question, the Trust included three private entities – twenty-five percent of its employer membership.

   Poyner asserts that case law supports her position that the Plan at issue is a governmental plan.  (Poyner's Response Brief at 3; Poyner's Moving Brief at 10). However, the cases cited by Poyner are distinguishable from the facts of this case.  In *Clark v. Group Plan for Employees of North Tonawanda Public Schools*, the court found that a group health plan, formed by a public school corporation for the benefit of its

employees, was a governmental plan exempt from ERISA regulation. 845 F.Supp. 117 (W.D.N.Y. 1994). In addition, in *Feinstein v. Lewis*, the court found that a group health plan, established pursuant to a collective bargaining agreement between several towns and one union for the benefit of public employees, was a governmental plan. 477 F.Supp. 1256 (S.D.N.Y. 1979). Finally, in *Lovelace v. Prudential Ins. Co. of America*, the court found that a health insurance plan established pursuant to collective bargaining by a public school district was a governmental plan exempt from ERISA. 775 F.Supp. 228 (S.D. Ohio 1991). Unlike *Clark, Feinstine*, and *Lovelace*, the Trust's founding members, and participating members at the relevant time of inquiry, included both public and private entities.

Poyner also likens her case to *Hall v. Maine Municipal Employees Health Trust*, *supra.* In *Hall*, the Maine Municipal Employees Health Trust ("MMEHT") was established as the successor to a group insurance plan established by a group of municipalities known as the Maine Municipal Association ("MMA"). 93 F.Supp.2d at 74. In the early 1980s, the MMA designated a group of individuals to establish the MMEHT to provide health benefits to their employees. *Id*. Eight years later, the MMEHT adopted a policy allowing non-governmental employers (associate, non-voting members of the MMA) to participate in the plan so long as they were non-profit organizations and performed a municipal function for the public. *Id*. at 74 n. 2.

In finding the MMEHT was a governmental plan, the court found that municipal governments established the MMEHT for the benefit of their employees. The court noted

that the MMEHT was established at the direction of the MMA, an organization considered to be "an instrumentality of its member municipal and quasi-municipal corporations" by the Maine Legislature. *Id*. at 81. The court further found that the participation of non-governmental employees amounted to 3.7% of the total employees participating in the MMEHT – a number it found to be *de minimis*. *Id*.

Poyner also cites the court to *Kirkpatrick v. Merit Behavioral Care Corp*., *supra*. In that case, the Vermont School Boards Insurance Trust, Inc. ("VSBIT") was formed pursuant to statute to provide health insurance for members of the Vermont School Boards Association, Inc. ("VSBA") and their employees. 70 F.Supp.2d at 445. In 1993, fifteen years after the VSBIT was formed, the VSBIT and the Vermont National Education Association ("VNEA"), a teachers' union, formed the Vermont Education Health Initiative ("VEHI") to manage the health insurance program initiated by VSBIT. *Id*.

According to VEHI's articles of association, its purpose was to contract for and provide health insurance coverage to those individuals employed by municipal school districts or municipalities created under Vermont Law. *Id*. Over 300 employers participated in the Schools Plan offered by VEHI, most of which were public school districts. *Id*. Non-governmental, school-related entities were participants in the plan and comprised 7.6% of the plan's participants. *Id*. at 445-46. The record did not indicate when the non-governmental employees became participants in the plan. *Id*. at 446.

In finding that the Schools Plan was a governmental plan, the court concluded:

9

> The Plaintiffs have presented uncontradicted evidence in the form of the statutory enabling legislation and the deposition testimony of Joseph Zimmerman that the Schools Plan was established by local governmental entities for their employees. Although the parties have extensively debated the amount and significance of participation by non public school employers in the Schools Plan, this debate goes to the issue of whether the plan is currently or was at the time of this lawsuit maintained by local government for its employees. Moreover, given the small number of non-governmental employees involved, the governmental plan exception's purpose is not violated and its scope is not unduly broadened by placing the Schools Plan within the exception.

*Id*. at 448.

In both *Hall* and *Kirkpatrick*, the facts clearly indicated that local governmental authorities established the medical plans at issue for the benefit of their governmental employees. In *Hall*, a group of municipalities established the MMEHT to provide health insurance for their municipal employees, and in *Kirkpatrick*, the VEHI was created pursuant to statute to carry out that same purpose. Here, there is no indication – other than the fact that the majority of the entities forming the Trust were governmental – that the Plan was established by governmental entities for the benefit of governmental employees. Although the plans in *Hall* and *Kirkpatrick* allowed non-governmental employers and their employees to become participants in their plans, the non-governmental employers were not founding members of the plans, and their numbers were such that they did not alter the plans' governmental status. In short, the Plan at issue involves both public and private employers for the benefit of their respective employees. It is therefore subject to ERISA regulation. *See Livolsi v. City of New Castle*, 501 F.Supp. 1146, 1150 (W.D. Pa. 1980) ("[W]hen a state or local government body chooses

a private welfare benefit plan for its employees, it will subject itself to federal jurisdiction under ERISA.").

In addition, the Plan is maintained as an ERISA Plan. It is administered by an independent Board of Trustees[3] and is in compliance with all applicable provisions of ERISA. (Second Burton Declaration ¶ 8). Although the Trust's compliance with ERISA regulations is not determinative of its status, *see Hall*, 93 F.Supp.2d at 75-76, this information is evidence of the Trust's intent and purpose.

Having found the Plan is an ERISA plan, Poyner is required, pursuant to the terms of the Plan and the provisions of the Subrogation Agreement, to remit all amounts she recovered in connection with the March 2005 accident, or $110,000, plus interest. Poyner's arguments to the contrary were previously addressed and rejected by this court in its previous Entry on Defendant's Motion to Dismiss.

---

[3] The court recognizes that a governmental plan may be administered through a third-party administrator without losing its governmental status. *Hall*, 93 F.Supp.2d at 80 (citing *Triplett*, 1999 WL 238944, at * 2).

## IV.     Conclusion

For the reasons set forth above, the court finds the Plan is an ERISA plan. Accordingly, Plaintiff's Motion for Summary Judgment (Docket # 41) is **GRANTED** and Defendant's Motion for Summary Judgment (Docket # 61) is **DENIED**.  Plaintiff is required to reimburse the Trust in the amount of $110,000, plus interest.


**SO ORDERED** this 19th   day of October 2007.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Carrie Wagner Bootcheck
BOSE MCKINNEY & EVANS, LLP
cbootcheck@boselaw.com

James Gregory Garrison
GARRISON LAW FIRM
greg@garrisonlegal.com

Melinda R. Shapiro
BOSE MCKINNEY & EVANS, LLP
mshapiro@boselaw.com